IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CARLISLE POWER TRANSMISSION PRODUCTS, INC., ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 05-3569-CV-S-ODS |
| UNITED STEEL WORKERS OF AMERICA and LOCAL NO. 662, ) ) ) ) | |
| Defendants. ) | |

## ORDER AND OPINION (1) GRANTING DEFENDANTS' MOTION FOR SUMMSRY JUDGMENT, (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (3) CONFIRMING ARBITRATION AWARD

Pending are cross-motions for summary judgment. For the following reasons, Defendants' motion (Doc. # 17) is granted, Plaintiff's motion (Doc. # 19) is denied, and the arbitrator's award is confirmed.

In light of the standard of review (which will be discussed in the following section), the following facts are gleaned from the arbitrator's findings. The parties are signatories to a Collective Bargaining Agreement ("CBA") that governs the relationship between Plaintiff and employees represented by the Defendants (collectively "the Union"). The CBA contains various provisions for discipline for various transgressions, which can include discharge. Separate from these are provisions (contained in Article 10, § 3) addressing "Breaking Service," which includes an employee being "[a]bsent from work for three (3) consecutive workdays, ending with the employee's work shift without proper notification to the Company."

Derek Harralson was hired by Plaintiff in April 2001 and was a member of the Union. In 2004 he injured his elbow, and on November 10, 2004, Harralson saw his regular doctor, Dr. William Parsons. Dr. Parsons diagnosed Harralson as suffering from ulnar neuropathy and permitted him to return to work with a fifteen pound weight restriction. Plaintiff did not have a position for Harralson that satisfied this condition, so

Harralson was placed on temporary total disability. AD at 14-15.[1] Dr. Parsons removed the restriction on December 9 and Harrelson returned to work; however, within two days the pain returned and Dr. Parsons reinstated the lifting restriction and Harrelson returned to disability status. AD at 15.

Plaintiff next saw Dr. T. Corsolini, a neurological specialist. On December 14, Dr. Corsolini indicated Plaintiff was "able to work without limitations" and scheduled Plaintiff for a Functional Capacity Evaluation ("FCE"). Copies of Dr. Corsolini's report were provided to Plaintiff and Harrelson. In contrast to Dr. Parsons, Dr. Corsolini did not discuss the report with Harrelson, and did not verbally indicate he was releasing Harrelson to work. Plaintiff viewed Dr. Corsolini's report as releasing Harrelson for work immediately; Plaintiff did not because (1) Dr. Corsolini did not say he was releasing Plaintiff for work and (2) Dr. Corsolini scheduled an FCE, suggesting a final determination had not been reached. AD at 15.

On December 17 (a Friday), Harrelson spoke with Plaintiff's Claims Administrator, Jennifer Hayden, to discuss the status of his disability check. Hayden told Harrelson Dr. Corsolini had released him to return to work, and Harrelson told Hayden he thought he was still to be off work pending the FCE. Hayden reviewed Dr. Corsolini's report and acknowledged the seeming conflict; she then called Dr. Corsolini's office but he was not available. Someone else in his office (not a doctor) "imagine[d] that he can go to work and the next [appointment] is pending the FCE." Hayden then told Harrelson to return to work on December 20 (the following Monday). AD at 15-16.

Harrelson reported for work on December 20 as instructed by Hayden. However, Plaintiff had already regarded Harrelson as having abandoned his employment because he was absent for three consecutive days, and therefore terminated him.[2]

---

[1]"AD at ___" refers to a page from the Arbitrator's Decision.

[2]The Termination Letter also suggests the termination was justified because Harrelson violated a rule requiring an employee to provide proper notice of absences. The Arbitrator rejected this justification because Plaintiff failed to abide by certain procedural requirements. AD. at 18-10. Plaintiff does not challenge this determination.

2

The Arbitrator observed that a termination for job abandonment is a non-disciplinary action; that is, the termination is really a recognition that the employee has, by his actions, severed his employment. AD at 12. Consequently, factors such as the employee's disciplinary record and work history are irrelevant, and the scope of review is limited. "First, it must be shown that the employee was aware that he was scheduled for work. Then it must be shown that the employee did not notify the Company that he did not intent to report to work but did not intend to resign. Finally, . . . the possibility of very unusual circumstances preventing the notification fo the Company must be considered." AD. at 13. In a footnote, the Arbitrator made clear that the last factor involves very rare circumstances, using as an example a natural disaster such as a hurricane.

In considering this case, the Arbitrator focused on the first issue: the employee's awareness he was scheduled to work. "[T]he evidence must show that the Grievant clearly understood that he was to report to work on a given date. The notice to the Grievant that he was scheduled to work is the responsibility of the Company. It is the burden of the Company to clearly communicate to the employee when he is to return to work from Workers' Compensation disability." AD at 19-20. The Arbitrator found Plaintiff did not directly communicate its expectation that Harrelson return to work on December 15 – instead, it left that task to Dr. Corsolini. This was found wanting in several respects: (1) Dr. Corsolini did not tell Harrelson he was released to work, (2) even if Dr. Corsolini told Harrelson he was capable of returning to work, he did not tell Harrelson he was scheduled to work, and (3) a different representative – Hayden – told Harrelson to return to work on December 20. AD at 20. In concluding her discussion, the Arbitrator declared "[i]t is the Company's responsibility to communicate directly to an employee when he is scheduled to work. When an employee is confused by the communication from a doctor and a Claims Administrator, and the Company does not step in to confirm that the Grievant is scheduled to work, then this can be the potential outcome." AD at 21.

## II. DISCUSSION

Judicial review of an arbitrator's decision is extremely limited. If the arbitrator is arguably construing or applying the collective bargaining agreement, a court may not set aside or amend the decision even if the court would have reached a different decision or is firmly convinced an error was made. E.g., United Food & Commercial Workers' Union v. St. John's Mercy Health Sys., 448 F.3d 1030, 1032 (8th Cir. 2006). An arbitrator's decision may be vacated "if the arbitrator ignored or disregarded the plain language of an unambiguous contract or nullified a provision of the contract." Star Tribune Co. v. Minnesota Newspaper Guild Typographical Union, 450 F.3d 345, 348 (8th Cir. 2006).

Plaintiff argues the Arbitrator's decision fails to draw its essence from the CBA – and actually contradicts it – by adding exceptions to Article 10, section 3, and by placing obligations on the employer where none are stated. Plaintiff further argues the Arbitrator applied a "just cause" standard to review its decision to terminate Harrelson. The Court disagrees in all respects. Implicit in the concept of an employer scheduling an employee to work is communication of the schedule to the employee. This obvious observation inures to the benefit of all concerned – the employer wants its employees to show up for work, and employees want to show up when they are expected to do so. Thus, while the CBA does not specifically state the employer must tell its employees when it expects its employees to work, such an obligation is (1) hardly surprising, (2) hardly onerous, (3) completely consistent with the CBA's provisions and (4) so naturally inferred that it defies credulity for anyone to suggest otherwise.[3] A requirement that the employer tell the employee when he is scheduled to work draws its essence from the

---

[3]Plaintiff suggests Harrelson should have known he was to return to his "regular" work shift. Nothing in the CBA establishes this point, and it is not even clear he had a regular work shift anymore: his most recent work assignment was on disability. Even if Harrelson had a "regular" work shift to which he could have returned, he did not necessarily know Plaintiff wanted him back on a particular day. Returning to work following recovery from an injury is not like returning to work on Monday following the weekend.

4

CBA, and the Arbitrator's determinations that Plaintiff effectively relied upon Dr. Corsolini to communicate this scheduling information – and that Dr. Corsolini failed in this endeavor – are entitled to deference. In addition, the Arbitrator's determination that Plaintiff's agent misdirected Harrelson by telling him to report for work after the three days elapsed is entitled to deference.

Plaintiff's contention that the Arbitrator created a "just cause" requirement out of whole cloth is misguided: the Arbitrator did not hold Harrelson had just cause for failing to come to work, but rather that Harrelson did not knowingly fail to come to work – and absent a knowing failure, job abandonment could not be presumed. The Arbitrator did mention the possibility that extremely unusual circumstances might provide just cause, but the example provided (a hurricane) and the discussion as a whole demonstrates this was not the ground upon which the Arbitrator relied in ruling in the Union's favor.

### III. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted. The Arbitrator's final decision and award are confirmed.

IT IS SO ORDERED.

DATE: January 11, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

5